UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| **Associated Builders & Contractors of Western Pennsylvania**; **Arrow Electric Inc.**; **Hampton Mechanical Inc.**; **Lawrence Plumbing LLC**; **R.A. Glancy & Sons Inc.**; **Westmoreland Electric Services LLC**; **Gregory H. Oliver Jr.**; **Daniel Vincent Glancy**; **Robert L. Casteel**; **Jason Phillip Boyd**; **Robert A. Glancy IV**, <br><br>     Plaintiffs, <br><br>v. <br><br>**Community College of Allegheny County**; **Quintin B. Bullock**, in his official capacity as President of the Community College of Allegheny County; **Pittsburgh Regional Building Trades Council**, <br><br>     Defendants. | Case No. 2:20-cv-649 _____ |

# COMPLAINT

The plaintiffs bring suit to enjoin the Community College of Allegheny County and its officials from enforcing their "project labor agreement" with the Pittsburgh Regional Building Trades Council.

The college's "project labor agreement" disqualifies businesses from receiving contracts or subcontracts for construction work unless they recognize a union affiliated with the Pittsburgh Regional Building Trades Council as the exclusive representative of their employees—even if the contractor's employees have chosen not to unionize, and even if the contractor's employees have chosen a different union to represent them. It also compels the college's contractors and subcontractors to use

employees referred by those unions on construction work performed for the college. This effectively precludes non-union craftsmen from performing work on the college's construction projects unless they join, pay, or associate with a union that belongs to the Pittsburgh Regional Building Trades Council. Finally, the college's project labor agreement compels its contractors and subcontractors to contribute to an affiliated union's pension and health-care funds and operate in accordance with that union's work rules and employment procedures.

The college imposes this "project labor agreement" on each of its construction projects, and it imposes these requirements on every contractor and subcontractor engaged in on-site construction work. *See* Project Labor Agreement Between the Community College of Allegheny County and the Pittsburgh Regional Building Trades Council, dated February 15, 2011 (attached as Exhibit 1).

The college's project labor agreement violates the rights of contractors and their employees under the First and Fourteenth Amendments and the National Labor Relations Act. It also violates state competitive-bidding laws. The plaintiffs seek declaratory and injunctive relief against its continued enforcement.

## JURISDICTION AND VENUE

1. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1367.

2. Venue is proper because a substantial part of the events giving rise to the claims occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(2).

3. Assignment to the Pittsburgh Division is proper because the Community College of Allegheny County is located within that division. *See* Local Civil Rule 3. In addition, the plaintiffs' claims against the defendants arose in this division. *See id*.

## PARTIES

4. Plaintiff Associated Builders & Contractors of Western Pennsylvania (ABC) is a membership organization of contractors who operate in western Pennsylvania. Its offices are located at 2360 Venture Drive, Gibsonia, Pennsylvania 15044.

5. Plaintiff Arrow Electric Inc. is a corporation that performs electrical contracting work in western Pennsylvania. Its offices are located at 857 Reynolds Industrial Park Road, Greenville, Pennsylvania 16125. Arrow Electric is a member of ABC.

6. Plaintiff Hampton Mechanical Inc. is a corporation that performs HVAC and sheet-metal contracting work in western Pennsylvania. Its offices are located at 4720 Highpoint Drive, Gibsonia, Pennsylvania 15044. Hampton Mechanical is a member of ABC.

7. Plaintiff Lawrence Plumbing LLC is a corporation that performs plumbing work in western Pennsylvania. Its offices are located at 1133 Industrial Park Road, Vandergrift, Pennsylvania 15690. Lawrence Plumbing is a member of ABC.

8. Plaintiff R.A. Glancy & Sons Inc. is a corporation that performs general contracting work in western Pennsylvania. Its offices are located at 2361 Venture Drive, Gibsonia, Pennsylvania 15044. R.A. Glancy & Sons is a member of ABC.

9. Plaintiff Westmoreland Electric Services LLC is a corporation that performs electrical contracting work in western Pennsylvania. Its offices are located at 193 Central Road, Tarrs, Pennsylvania 15688. Westmoreland Electric Services is a member of ABC.

10. Plaintiff Gregory H. Oliver Jr. is a welder employed by Hampton Mechanical. Mr. Oliver resides in Allegheny County.

11. Plaintiff Daniel Vincent Glancy is a craftsman employed by R.A. Glancy & Sons. Mr. Glancy resides in Allegheny County.

12. Plaintiff Robert L. Casteel is a craftsman employed by R.A. Glancy & Sons. Mr. Casteel resides in Allegheny County.

13. Plaintiff Jason Phillip Boyd resides in Allegheny County, and he pays taxes to Allegheny County and the Commonwealth of Pennsylvania.

14. Plaintiff Robert A. Glancy IV resides in Allegheny County, and he pays taxes to Allegheny County and the Commonwealth of Pennsylvania.

15. Defendant Community College of Allegheny County is a community college located in Allegheny County. The college may be served at its Office of General Counsel, located at Byers Hall, 808 Ridge Avenue, Pittsburgh, Pennsylvania 15212.

16. Defendant Quintin B. Bullock is the President of the Community College of Allegheny County. Dr. Bullock is sued in his official capacity. Dr. Bullock may be served at the college's Office of General Counsel, located at Byers Hall, 808 Ridge Avenue, Pittsburgh, Pennsylvania 15212.

17. Defendant Pittsburgh Regional Building Trades Council is an organization comprising over 33 local unions from 19 different craft sectors. The Council may be served at 1231 Banksville Road, Pittsburgh, Pennsylvania 15216.

## FACTS

18. A project labor agreement (PLA) is a mandatory union collective-bargaining agreement that all contractors must sign to work on a public-works construction project.

19. A project labor agreement forces participating contractors to: (a) recognize certain unions as the exclusive representative of their employees; (b) require that their employees who work on a public-works construction project become dues-paying members of those unions as a condition of their continued employment; (c) contribute to the union's pension and healthcare funds; (d) operate according to the union's work rules; and (e) follow the union's procedures for hiring, firing, and disciplining employees who perform construction work on a public-works project.

20. Twenty-five (25) states ban the use of PLAs.[1]

21. On February 15, 2011, the Community College of Allegheny County entered into a project labor agreement with the Pittsburgh Regional Building Trades Council.

22. This project labor agreement applies to the college's "onsite construction work." *See* Project Labor Agreement Between the Community College of Allegheny County and the Pittsburgh Regional Building Trades Council, dated February 15, 2011, article IV, section 1 (attached as Exhibit 1).

23. Only contractors (and subcontractors) who agree to the terms of the project labor agreement with the Pittsburgh Regional Building Trades Council are eligible to perform construction work for the college. *See id.* at article I, section 1, ¶ 2 ("[A]ll construction work covered by this Agreement on the Project shall be contracted exclusively to Contractors who agree to execute and be bound by the terms of this Agreement."); *id.* ("The Prime Contractors shall monitor compliance with this Agreement by all contractors, who through their execution of a Letter of Assent hereto, together with their subcontractors, shall become bound hereto.").

24. The college's project labor agreement compels these contractors and subcontractors to recognize a union that belongs to the Pittsburgh Regional Building Trades Council as the "sole and exclusive bargaining representatives of all craft employees within their respective jurisdictions working on the Project." *See id.* article VI, section 1.

25. The college's project labor agreement also requires contractors and subcontractors to hire their employees through the unions' job-referral system. *See id.* at

---

1. The States that ban PLAs are: Alabama, Arkansas, Idaho, Iowa, Florida, Georgia, Kentucky, Louisiana, Mississippi, Missouri, Michigan, Montana, Nevada, New Mexico, North Carolina, North Dakota, Nebraska, Oklahoma, South Carolina, South Dakota, Tennessee, Utah, Virginia, West Virginia, and Wisconsin.

article VI, section 3 ("For Local Unions having a job referral system, each Contractor agrees to comply with such system, and the referral system shall be used exclusively by such Contractor, except as modified by this Article."); *id.* at article VI, section 4 ("In the event that a signatory Local Union does not have a job referral system as set forth in Section 3 above, the Contractor shall give the Union forty-eight (48) hours to refer applicants.").

26. This effectively precludes non-union workers—or workers who belong to different unions from those affiliated with the Pittsburgh Regional Building Trades Council—from performing onsite construction work for the college. And it compels workers to join, pay, or associate with a union belonging to the Pittsburgh Regional Building Trades Council as a condition of employment related to the college's onsite construction work.

27. The project labor agreement contains a narrow exception to its requirement that contractors hire their employees through the unions' job-referral system. In article VI, section 9, the project labor agreement establishes the following exception for "core employees":

> To provide opportunities to participate on the Project to minority and women owned business enterprises as well as other enterprises which do not have a relationship with the Unions signatory to this Agreement and to ensure that such enterprises. will have an opportunity to employ their "core" employees on this Project, the parties agree that any such enterprise has the right to select core employees whom it will employ on site, in accordance with the formula below and who:
>
> (a) possess any license required by the state or federal law for the Project work to be performed;
>
> (b) have worked a total of at least 1,200 hours per year in the construction craft during each of the prior 3 years, including participating in a state certified apprenticeship program;
>
> (c) were on the Contractor's active payroll for at least 60 out of the 180 calendar days prior to the contract award;

(d) have the ability to perform safely the basic functions of the applicable trade.

The first employee and the third employee, or up to ten (10) percent of all employees, whichever is greater, hired by each contractor may be core employees. After such core employees have been hired by any contractor, all the employees shall thereafter be hiring hall referrals by the appropriate signatory unions in accordance with the provisions of~ applicable local collective bargaining agreements.

*Id.*, article VI, section 9 (attached as Exhibit 1). This provision appears to allow non-union contractors—as well as union and non-union businesses owned by minorities and women—to use their "core employees" for a small subset of the available jobs, so long as they fill the remaining slots with referrals from the union hiring halls.

28.  Article VI, section 8 of the college's project labor agreement contains a "non-discrimination" provision stating that "[n]o employee covered by this Agreement shall be required to join any Union or pay any agency fees or dues as a condition of being employed, or remaining employed, on the Project." *Id.*, article VI, section 8 (attached as Exhibit 1). But this "non-discrimination" provision is disingenuous. The requirement that contractors and subcontractors hire their employees from the unions' job-referral systems compels workers to join and pay those unions as a condition of performing any onsite construction work for the college, because the unions will not refer non-members through their hiring halls.

29.  Finally, the college's project labor agreement requires contractors and subcontractors to contribute to that union's pension and health-care funds. *See id.*, article XI, section 2.

## FACTS RELATED TO STANDING

30.  Plaintiff Associated Builders & Contractors of Western Pennsylvania (ABC) is a membership organization of contractors who operate in western Pennsylvania. Almost all of ABC's members are non-union.

31. The employees of the non-union ABC contractors have exercised their right not to unionize—a right that is protected by the First Amendment and the National Labor Relations Act.

32. ABC has associational standing to challenge the college's project labor agreement.

33. To establish associational standing, an entity must show that: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

34. The non-union members of ABC would have standing to challenge the college's project labor agreement if they sued as individuals, because the college's project labor agreement prohibits the non-union members of ABC from working on the college's construction projects unless they: (1) recognize a union that belongs to the Pittsburgh Regional Building Trades Council as the exclusive representative of their employees—even though their employees have exercised their constitutional and statutory rights to decline union representation; (2) hire employees from a union's job-referral systems rather than use their own employees to perform work on college's projects; and (3) contribute to that union's pension and health-care funds. This inflicts injury in fact, and this injury will be remedied by an injunction against the continued enforcement of the college's project labor agreement.

35. Plaintiffs Arrow Electric, Hampton Mechanical, Lawrence Plumbing, R.A. Glancy & Sons, and Westmoreland Electric Services—each of whom is a member of ABC—would have individual standing to challenge the college's project labor agreement for the same reason.

36. The interests that ABC seeks to protect in the litigation are germane to the organization's purpose. As ABC explains on its website: "Each ABC member firm,

regardless of its size or specialty, shares one thing in common: a steadfast commitment to the free enterprise system and the Merit Shop philosophy. This philosophy maintains that the construction process operates best when guided by the principle that the lowest responsible bidder should be awarded the contract." *See* http://www.abcwpa.org (last visited on May 1, 2020).

37. Neither the claims asserted by ABC nor the relief requested in this litigation requires the participation of the organizations' individual members.

38. Plaintiffs Arrow Electric, Hampton Mechanical, Lawrence Plumbing, R.A. Glancy & Sons, and Westmoreland Electric Services are non-union contractors that operate in Western Pennsylvania. Because their employees have exercised their constitutional right to decline union membership, each of these contractor plaintiffs is ineligible to work on the college's construction projects unless it: (1) recognizes a union that belongs to the Pittsburgh Regional Building Trades Council as the exclusive representative of its employees—even though its employees have exercised their constitutional and statutory rights to decline union representation; (2) hire employees from the a union's job-referral systems rather than use its own employees to perform work on college's projects; and (3) contribute to that union's pension and health-care funds. This inflicts injury in fact. This injury is caused by the defendants' enforcement of the college's project labor agreement with the Pittsburgh Regional Building Trades Council, and it will be redressed by declaratory and injunctive relief that prevents the defendants from enforcing the PLA.

39. Plaintiff Gregory H. Oliver Jr. is an employee of Hampton Mechanical, and plaintiffs Daniel Vincent Glancy and Robert L. Casteel are employees of R.A. Glancy & Sons. The college's project labor agreement prevents Mr. Oliver, Mr. Glancy, and Mr. Casteel from working on college construction projects because they have exercised their constitutional and statutory right to decline union membership, and it compels them to obtain employment through the unions' hiring halls if they want to

perform any onsite construction work. This inflicts injury in fact. This injury is caused by the defendants' enforcement of the college's project labor agreement with the Pittsburgh Regional Building Trades Council, and it will be redressed by declaratory and injunctive relief that prevents the defendants from enforcing the PLA.

40. Plaintiffs Jason Philip Boyd and Robert A. Glancy IV are residents and taxpayers of Allegheny County and the Commonwealth of Pennsylvania, and they have standing as taxpayers to challenge the college's violation of Pennsylvania's competitive-bidding laws and other constitutional violations that arise from the college's project labor agreement. *See Frothingham v. Mellon*, 262 U.S. 447, 486–87 (1923) ("[R]esident taxpayers may sue to enjoin an illegal use of the moneys of a municipal corporation."). The college's enforcement of its project labor agreement with the Pittsburgh Regional Building Trades Council inflicts injury in fact on county and state taxpayers by awarding projects to someone other than the lowest bidder. This injury is caused by the defendants' enforcement of the college's project labor agreement with the Pittsburgh Regional Building Trades Council, and it will be redressed by declaratory and injunctive relief that prevents the defendants from enforcing the PLA.

## CLAIM FOR RELIEF NO. 1:
## VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS

41. Both public and private employees have a constitutional right to decide whether they will join or associate with a union. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984) ("Freedom of association therefore plainly presupposes a freedom not to associate." (citing *Abood v. Detroit Board of Education*, 431 U.S. 209, 234–35 (1977)); *Pattern Makers' League of N. Am., AFL-CIO v. N.L.R.B.*, 473 U.S. 95, 106 (1985) ("Full union membership thus no longer can be a requirement of employment.").

42. The Constitution also forbids a public employer to require its employees to join or financially support a union as a condition of employment. *See Janus v. American Federation of State, County, and Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018).

43. A public employer cannot evade the holdings of *Abood* and *Janus* by contracting out its work and then allowing that work to be performed only by employees hired through a union's job-referral system.

44. Nor can the college require the employees of contractors to relinquish their First Amendment rights as a condition of working on the college's construction projects. *See Board of County Commissioners, Wabaunsee County, Kansas v. Umbehr*, 518 U.S. 668, 674 (1996) ("The government 'may not deny a benefit to a person on a basis that infringes his constitutionally protected . . . freedom of speech' even if he has no entitlement to that benefit" (quoting *Perry v. Sindermann,* 408 U.S. 593, 597 (1972))."

45. The college is violating the First and Fourteenth Amendments by requiring its contractors to hire their employees through the job-referral systems operated by unions affiliated with the Pittsburgh Regional Building Trades Council.

46. The court should declare that the college's project labor agreement violates the First and Fourteenth Amendments, and it should enjoin the defendants from enforcing it.

47. The plaintiffs assert this claim under the causes of action established in 42 U.S.C. § 1983, *Ex parte Young*, 209 U.S. 123 (1908), and the Declaratory Judgment Act, 28 U.S.C. § 2201.

## CLAIM FOR RELIEF NO. 2: VIOLATION OF THE NATIONAL LABOR RELATIONS ACT

48. 29 U.S.C. § 157 gives employees the right to decide whether they want union representation. *See N.L.R.B. v. J. Weingarten, Inc.*, 420 U.S. 251, 256–57 (1975)

("An employee's right to union representation upon request is based on Section 7 of the Act which guarantees the right of employees to act in concert for 'mutual aid and protection.'"); *N.L.R.B. v. Granite State Joint Bd., Textile Workers Union of America, Local 1029, AFL-CIO*, 409 U.S. 213, 216 (1972) ("Under § 7 of the Act the employees have 'the right to refrain from any or all' concerted activities relating to collective bargaining or mutual aid and protection, as well as the right to join a union and participate in those concerted activities.").

49.   Plaintiff Gregory H. Oliver Jr. and his fellow employees at Hampton Mechanical have exercised their right to decline to union representation—a right protected by section 7 of the National Labor Relations Act.

50.   Plaintiffs Daniel Vincent Glancy and Robert L. Casteel, along with their fellow employees at R.A. Glancy & Sons, have likewise exercised their right to decline to union representation—a right protected by section 7 of the National Labor Relations Act.

51.   The college's project labor agreement violates the National Labor Relations Act because it prevents Mr. Oliver, Mr. Glancy, and Mr. Casteel from performing on-site construction work for the college because of their refusal to join a union belonging to the Pittsburgh Regional Building Trades Council.

52.   The college's project labor agreement also violates the National Labor Relations Act by forcing college contractors to recognize a union that belongs to the Pittsburgh Regional Building Trades Council as the representative of its employees—even if its employees have chosen to decline union representation or have chosen a different union to represent them.

53.   The college's project labor agreement violates the National Labor Relations Act for yet another reason: It prevents employees from working on the college's construction projects unless they are hired their employees through the job-referral systems operated by unions affiliated with the Pittsburgh Regional Building Trades

Council. This requires employees who wish to work on a college construction project to become union members, because the unions will not refer nonmembers through their hiring halls. This violates 29 U.S.C. § 158(a)(3), which abolished the compulsory union shop. *See Pattern Makers' League of N. Am., AFL-CIO v. N.L.R.B.*, 473 U.S. 95, 106 (1985) ("Section 8(a)(3) of [the Taft–Hartley] Act effectively eliminated compulsory union membership by outlawing the closed shop. The union security agreements permitted by § 8(a)(3) require employees to pay dues, but an employee cannot be discharged for failing to abide by union rules or policies with which he disagrees. Full union membership thus no longer can be a requirement of employment.").

54. Finally, the college's project labor agreement violates 29 U.S.C. § 158(e), which forbids a labor organization and an employer "to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforceable and void." The only exception to this rule is for employers engaged primarily in the building and construction industry, but this exception is inapplicable because the Community College of Allegheny County is not an employer engaged primarily in the building and construction industry.

55. The court should therefore declare that the college's project labor agreement violates the National Labor Relations Act, and it should enjoin the defendants from enforcing it.

56. The National Labor Relations Act establishes federal "rights" enforceable under 42 U.S.C. § 1983. *See Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 109 (1989).

57. The plaintiffs assert this claim under the causes of action established in 42 U.S.C. § 1983, *Ex parte Young*, 209 U.S. 123 (1908), and the Declaratory Judgment Act, 28 U.S.C. § 2201.

## CLAIM FOR RELIEF NO. 3:
## VIOLATION OF STATE COMPETITIVE-BIDDING LAWS

58. Section 3911(a) of the Commonwealth Procurement Code (Procurement Code) requires that in any "contract to be entered into by a government agency through competitive sealed bidding, the contract shall be awarded to the lowest responsible and responsive bidder within 60 days of the bid opening, or all bids shall be rejected except as otherwise provided in this section." 62 Pa. Cons. Stat. § 3911(a).

59. Article III, Section 22 of the Pennsylvania Constitution also mandates competitive bidding and states that the General Assembly "shall maintain by law a system of competitive bidding under which all purchases of materials, printing, supplies or other personal property used by the government of this Commonwealth shall so far as practicable be made." The Pennsylvania Commonwealth Court has held that Article III, section 22 of the Pennsylvania Constitution applies to services and construction projects. *See Allan Myers, L.P. v. Dep't of Transp.*, 202 A.3d 205, 211 (Pa. Cmwlth. 2019).

60. These competitive-bidding requirements "guard against favoritism, improvidence, extravagance, fraud and corruption in the awarding of municipal contracts . . . and are enacted for the benefit of property holders and taxpayers, and not for the benefit or enrichment of bidders." *Yohe v. City of Lower Burrell*, 208 A.2d 847, 850 (Pa. 1965).

61. The intent of competitive-bidding statutes is "to 'close, as far as possible, every avenue to favoritism and fraud in its varied forms.'" *Premier Comp Solutions, LLC v. Department of General Services*, 949 A.2d 381, 382 n.1 (Pa. Cmwlth. 2008) (quoting *Louchheim v. Philadelphia*, 66 A. 1121, 1122 (Pa. 1907)).

62. Bidders for a public contract must be "on an equal footing" and enjoy the same opportunity for open and fair competition. *See Philadelphia Warehousing and Cold Storage v. Hallowell*, 490 A.2d 955, 957 (Pa. Cmwlth. 1985).

63. When there is no common standard on which bids are based, "[t]he integrity of the competitive bidding process is violated and the purpose of competitive bidding is frustrated." *Allan Myers, L.P. v. Dep't of Transp.*, 202 A.3d 205 (Pa. Cmwlth. 2019).

64. Thus, when the actual "procedures followed emasculate the benefits of [competitive] bidding, judicial intervention is proper." *Id.* (quoting *Ezy Parks v. Larson*, 454 A.2d 928, 932 (Pa. 1982)); *see also Conduit and Foundation Corporation v. City of Philadelphia*, 401 A.2d 376, 379 (Pa. Cmwlth. 1979) ("[T]he courts will not condone a situation that reveals a clear potential to become a means of favoritism, regardless of the fact that the . . . officials may have acted in good faith in the particular case.")).

65. The college is violating state competitive-bidding laws because its project labor agreement discriminates against non-union contractors, as well as contractors whose employees are represented by a union that does not belong to the Pittsburgh Regional Building Trades Council. This confers an unlawful favoritism upon contractors whose employees have joined a union belonging to the Pittsburgh Regional Building Trades Council. Contractors that already maintain collective-bargaining agreements with the city-approved unions will be able to use their current workforce and their current collective-bargaining agreement, while the contractor plaintiffs would be forced to hire new employees through the union hiring hall.

66. The college's project labor agreement does not prescribe common standards for all bidders, and all contractors bidding on the college's public-works projects are not on an equal footing. The college's project labor agreement violates the integrity of the competitive-bidding process.

67. The court should declare that the college's project labor agreement violates state competitive-bidding laws, and it should enjoin the defendants from enforcing it.

68. The plaintiffs assert this claim under the supplemental-jurisdiction statute, 28 U.S.C. § 1367, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

## DEMAND FOR RELIEF

69. The plaintiffs respectfully request that the court:

   a. declare that the defendants are violating the plaintiffs' constitutional rights under the First and Fourteenth Amendments by enforcing the college's project labor agreement;

   b. declare that the defendants are violating the plaintiffs' federal rights under the National Labor Relations Act by enforcing the college's project labor agreement;

   c. declare that the defendants are violating Pennsylvania's competitive-bidding laws by enforcing the college's project labor agreement;

   d. issue a preliminary and permanent injunction that prevents the defendants from enforcing the college's project labor agreement;

   e. award costs and attorneys' fees under 42 U.S.C. § 1988;

   f. grant other and further relief that the Court may deem just, proper, or equitable.

          Respectfully submitted.

          */s/ Thomas E. Weiers Jr.*

Jonathan F. Mitchell*       Thomas E. Weiers Jr.
Pennsylvania Bar No. 91505      Pennsylvania Bar No. 43715
Mitchell Law PLLC      Thomas E. Weiers Jr., Esq.
111 Congress Avenue, Suite 400      2000 Georgetowne Drive, Suite 100
Austin, Texas 78701      Sewickley, Pennsylvania 15143
(512) 686-3940 (phone)      (724) 719-6360 (phone)
(512) 686-3941 (fax)      (724) 935-3233 (fax)
jonathan@mitchell.law      tom.weiersesq@gmail.com

Walter S. Zimolong*
Pennsylvania Bar No. 89151
Zimolong LLC
P.O. Box 552
Villanova, PA 19085
(215) 665-0842 (phone)
wally@zimolonglaw.com

* applications for admission pending

Dated: May 1, 2020      *Counsel for Plaintiffs*